

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102586 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Montgomery County |
| vs. | ) | |
| | ) | Honorable Wesley C. Dalton |
| KELLI CARIN SMITH, | ) | |
| | ) | |
| Appellant. | ) | Filed: December 22, 2015 |

### Introduction

Kelli Smith (Defendant) appeals her conviction of first-degree involuntary manslaughter. Defendant raises nine points on appeal, claiming that the trial court erred by: denying Defendant's motion to suppress her blood because the seizure was unlawful (I) and the blood was inadmissible under Missouri's implied consent law (II); precluding Defendant from referencing her involuntary intoxication defense during voir dire (III) and opening statement (IV); refusing to submit an involuntary intoxication instruction (V); improperly instructing the jury regarding the results of the blood alcohol test under Missouri Approved Instructions— Criminal (MAI-CR 3d) 310.04 (VI); excluding certain expert testimony (VII); and overruling Defendant's motion for a new trial based on the improper substitution of an alternate juror after deliberations began (VIII) and juror misconduct (IX). Because the trial court erred by omitting

the third paragraph of MAI-CR 3d 310.04, as required by the MAI, and Defendant thereby suffered prejudice, we reverse and remand for a new trial.

## Background

On an evening in February 2012, Defendant went to some bars in Columbia, Missouri. When the bars closed, Defendant drove several blocks to drop off some friends at their home. Then, around 3:32 a.m., and about 50 miles from Columbia, Defendant drove the wrong way on U.S. Interstate 70, struck another vehicle, and killed its occupant. A blood test approximately 7.5 hours after the accident revealed that Defendant's blood alcohol content (BAC) was .085 percent, which is over the legal limit.

The State charged Defendant with one count of first-degree involuntary manslaughter. A five day jury trial ensued, during which Defendant's blood test was admitted into evidence. Defendant vigorously attacked the reliability of the blood test and also raised the defense of involuntary intoxication. Regarding the accuracy of the blood test, it was Defendant's theory, based on the testimony of her expert witness, that law enforcement's failure to refrigerate the sample for ten days after its collection caused the blood to ferment, resulting in a higher BAC at the time of the test than actually existed at the time of the draw.

After the close of evidence, the trial court provided the jury with instructions on the elements of first-degree involuntary manslaughter and guidance regarding its consideration of the blood test under MAI-CR 3d 310.04, among other instructions. Regarding MAI-CR 3d 310.04, Defendant asked that the third paragraph of the MAI be provided, but the trial court declined Defendant's request. The jury asked multiple questions during deliberations regarding the meaning of intoxication, but ultimately returned a guilty verdict. The trial court entered a

judgment consistent with the jury's verdict and sentenced Defendant to five years' imprisonment. Defendant appeals.

## Standard of Review

Rule 28.02(c) mandates the exclusive use of the MAI-CR whenever an instruction is applicable under the law. Failure to provide an applicable MAI instruction constitutes error, the prejudicial effect of which is judicially determined. *State v. Davis*, 203 S.W.3d 796, 798 (Mo. App. W.D. 2006). Whenever the given instruction violates the Notes on Use, the error is presumptively prejudicial unless clearly demonstrated otherwise. *State v. Turnbough*, 876 S.W.2d 19, 20 (Mo. App. E.D. 1994). In this context, "[p]rejudice exists when the [defendant] demonstrates that in the absence of such error a reasonable probability exists that the verdict would have been different." *Davis*, 203 S.W.3d at 798 (citation and quotations omitted).

## Discussion

As Defendant asserted at oral argument, Defendant's Point VI is dispositive and renders consideration of Defendant's remaining points unnecessary. In her sixth point relied on, Defendant claims that the trial court abused its discretion by denying her offer of MAI-CR 3d 310.04, which included the third paragraph of that instruction, because the Notes on Use make the provision of this paragraph mandatory if the defendant requests it and the omitted paragraph "would have instructed the jury that if there was less than [.08] percent of alcohol then they cannot find from this evidence alone that the defendant was under the influence . . . ." Defendant maintains that she was prejudiced by this error "because the reliability of the blood test was heavily disputed, and the jury repeatedly sent notes informing the Court that it had trouble deciding unanimously if [Defendant] was impaired by alcohol." In response, the State concedes

3

that instructional error occurred, but asserts that Defendant did not suffer prejudice as a result because the omitted paragraph was inapplicable under the present facts.

MAI-CR 3d 310.04, pertaining to blood alcohol evidence, provides:

[1]     Evidence has been introduced that a specimen was taken of the defendant's [blood] . . . , and that upon analysis it disclosed that there was alcohol in his blood. . . . .

[2]     If you find and believe beyond a reasonable doubt that there was eight-hundredths or more of one percent by weight of alcohol in the blood of the defendant at the time a specimen was taken, you may, but are not required to, infer that the defendant was under the influence of alcohol at the time that specimen was taken.

[3]     If there was less than eight-hundredths of one percent by weight of alcohol in the blood of the defendant at the time a specimen was taken, you cannot find from this evidence alone that the defendant was under the influence of alcohol at the time that specimen was taken.

[4]     The state has the burden of proving beyond a reasonable doubt that the defendant was under the influence of alcohol at the time of the offense.  In determining whether or not the defendant was under the influence of alcohol at the time of the offense, you may consider the results of the analysis along with all of the other evidence bearing upon that issue.

Notes on Use paragraph 3(a) provides:

If the only analysis admitted into evidence discloses eight-hundredths or more of one percent (.08 of 1% or more) by weight of alcohol in the blood (blood alcohol), then give paragraphs [1], [2] and [4] if this instruction is being requested by the state; but, include paragraph [3] if that paragraph is requested by defendant.

Here, Defendant requested that the third paragraph MAI-CR 3d 310.04 be provided to the jury and the trial court, contrary to the mandate of Notes on Use paragraph 3(a), provided the State's proposed version of MAI-CR 3d 310.04, which omitted the third paragraph and only included paragraphs [1], [2], and [4].  By failing to provide the third paragraph of the instruction to the jury despite Defendant's request that that paragraph be submitted, the trial court acted

4

contrary to the MAI and committed error. The State concedes that such an error occurred, but claims that the error was not prejudicial.

During trial, Defendant proffered evidence relevant to the third paragraph of MAI-CR 3d 310.04. Mainly, Defendant introduced extensive evidence that the blood sample was unreliable and that Defendant's driving could be attributed to something other than alcohol alone. Defense counsel elicited testimony from Corporal Raymond Scott Miller, who collected the sample, and testified that the blood had been left unrefrigerated for ten days—first in his car during the winter temperatures of February and then at the Troop F Division 9 zone office—contrary to departmental policy. Defense counsel also produced the testimony of an expert, Dr. Jimmie Valentine, a PhD in chemistry and professor of pediatrics and pharmacology, who testified to a reasonable degree of scientific certainty that the blood test was not indicative of the amount of alcohol in Defendant's body when the blood was drawn, given that the sample had not been handled properly and fermentation in the blood could have converted blood glucose to alcohol. The implication of this testimony, as Valentine explained, is that Defendant's BAC was actually less than .085 percent at the time when the blood was drawn. Valentine further indicated, consistent with the testimony of Defendant's drug recognition expert, that Defendant's driving was not consistent with "alcohol intoxication alone."

Given the foregoing evidence, a jury could have reasonably believed that Defendant's BAC was actually below the legal limit "at the time when [the] specimen was taken." MAI-CR 3d 310.04[3]. If the jury had made such a conclusion, then pursuant to the instruction's omitted language, the jury would be required to find other evidence of intoxication to conclude that Defendant was, in fact, intoxicated. *See id*. The jury, however, due to the trial court's error, was deprived of the opportunity to consider the evidentiary and legal significance of Defendant's

5

evidence under the guidance of the third paragraph and, instead, was instructed pursuant to the second paragraph of the instruction that it could "infer" intoxication from the blood test alone. Comparatively, the omitted language would have called to the jury's attention the theory that the test was unreliable and that the other additional evidence of intoxication was not overwhelming.[1] Provision of the third paragraph, then, would have benefited Defendant by highlighting the significance of Defendant's evidence and possibly equalized the relative significance of the State and Defendant's evidence. Defendant was deprived of this benefit and the "object and purpose of [MAI-CR 3d 310.04[3] was] not otherwise fulfilled." *State v. Nunn*, 646 S.W.2d 55, 59 (Mo. banc 1983) (requiring reversal where the purpose of an omitted instruction is not met).

While we cannot know with any certainty the precise effect that submission of the correct instruction would have had on the jurors given the evidence in this case, we are nonetheless left with a firm impression that submission of the omitted paragraph could have altered the deliberations to the extent that a reasonable probability exists that the jurors would have found Defendant not guilty. *See Davis*, 203 S.W.3d at 798. Under the circumstances where the results of the blood test were vigorously attacked, the jury reasonably could have believed that Defendant's BAC was below the legal limit when the sample was drawn and, absent provision of the third paragraph, the jury was left to speculate as to the legal and evidentiary significance of such a test. Indeed, given that the jury asked for guidance regarding the meaning of "under the influence" and later, "intoxicated condition," during deliberations, provision of the third paragraph could have influenced the jury in Defendant's favor.

---

[1] While Defendant's driving was certainly dangerous and erratic and first responders smelled alcohol on Defendant's breath, no witnesses saw Defendant drinking alcohol at the bars in Columbia, no sobriety tests were conducted given that Defendant was unconscious due to a traumatic brain injury Defendant suffered in the accident, and that her erratic driving was the result of a date rape drug.

6

The State's contention that Defendant suffered no prejudice as a result of the omission—because (1) the third paragraph was inapplicable since it was undisputed that the result of the test was .085 percent and (2) the jury was still able to consider "fermentation, refrigeration, and all other issues Defendant raised"—is unavailing. The State's suggestion that the third paragraph is inapplicable reflects a misunderstanding of the instruction's language, and the State's assertion that the jury was able to consider the reliability of test misses the significance of Defendant's evidence in light of MAI-CR 3d 310.04's dictate. In short, the State has failed to demonstrate that the error, which it concedes occurred, was not prejudicial. Reversal of Defendant's conviction is necessary and this matter is remanded for a new trial. Point VI granted.

## Conclusion

The judgment of the trial court is reversed and this matter is remanded for a new trial.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.

7